Hanson vs. Dunn.

HANSON, Appellant, vs. DUNN, Respondent.

*March 22 — April 8, 1890.*

76  455
77  403
76  455
84  301

*Voluntary assignment: When title passes: Filing of copy, with indorsements: Indorsement by officer after filing.*

1. The filing of a copy of the assignment, properly certified and indorsed, as required by secs. 1695, 1696, R. S., is necessary to complete an assignment and pass the title to the assignee as against the creditors of the assignor.

2. The filing of the original assignment is *held* not a sufficient compliance with the statute, where such original was certified by the assignee to be a copy, and did not have indorsed thereon the certificate of the officer taking the bond, as required by sec. 1696, R. S., and was not left upon file, but was immediately taken away by the attorney of the assignee.

3. The certificate of the officer taking the bond, required by sec. 1696, R. S., may be indorsed upon the copy of the assignment after it is filed, and when so indorsed will operate to complete the assignment (if it is otherwise perfect) and pass the title to the assignee as against all creditors who have not acquired a lien previous to such indorsement.

APPEAL from the Circuit Court for *Eau Claire* County.

Replevin. There was a verdict for the defendant, and from the judgment entered thereon the plaintiff appeals. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The plaintiff in this action is the assignee of one L. G. Norgan by virtue of a voluntary assignment made by said Norgan for the benefit of all of his creditors, and claims the right to the property in question by virtue of such as-

signment.  The defendant, as sheriff of Eau Claire county,
claims the right to the possession of the property by virtue
of certain writs of attachment issued in three actions com-
menced by three creditors of said L. G. Norgan against him
to recover their several demands.  In one of said actions
the sheriff levied upon the goods in question at 2 o'clock
P. M. of the 9th day of January, 1888; and in the other ac-
tions the writs were levied, one on January 10 between 9:30
and 11 o'clock A. M., and the other on January 12, 1888.
The plaintiff claims that the assignment had been perfected
on the 9th of January, 1888, before the attachment made
on that day, and that he was in possession of the property
in question under said assignment when the writ in said
first action was levied.

After the attachments were levied the plaintiff com-
menced an action of replevin against the defendant to re-
cover the possession of said goods.  The writ was served,
and the possession of the property was taken from the
sheriff and delivered to the plaintiff.  The defendant in his
answer claims the right to the possession of the goods by
virtue of said writs of attachment.  The only controversy
between the parties on the trial in the circuit court was as
to the priority of right between the plaintiff as assignee,
and the defendant as sheriff, acting on behalf of the attach-
ing creditors.  No question was made as to the legality of
the assignment, nor as to the regularity of the attachment
proceedings, but on the part of the defendant it was con-
tended that the testimony showed conclusively that the as-
signment was not perfected until after all the attachments
were levied; and on the part of the plaintiff it was con-
tended that the assignment was perfected so as to defeat
the first as well as the subsequent attachments.

The facts which may be said to have been fairly estab-
lished by the evidence on the trial are as follows: On the
9th day of January, 1888, Norgan executed a voluntary as-

signment of all his property for the benefit of all his cred-
itors. The assignment was in due form, and executed and
delivered to the plaintiff, *Hanson*, as his assignee, and at
the same time the said *Hanson*, as such assignee, delivered
to M. D. Bartlett, Esq., a court commissioner for Eau Claire
county (that being the county in which such assignor resided),
the bond required by sec. 1694, R. S., with sureties as re-
quired by said section, and said bond was approved by said
court commissioner. This assignment was made and de-
livered to the said *Hanson* as assignee, and the said bond,
with sureties as required by said section, and approved by
said court commissioner, was executed and delivered to said
commissioner on the said 9th day of January, 1888, about
2 o'clock in the afternoon of said day. At the same time
the said assignee indorsed on the back of said original as-
signment his acceptance of the trust, in writing, as follows:

"I, *Peter Hanson*, the undersigned, named as assignee
in the instrument of assignment of which the within and
foregoing is a copy, do hereby consent to take upon myself
the faithful discharge of the several trusts specified in said
assignment, and that the within is a correct copy of the
original. PETER HANSON.

"Dated Eau Claire, Wis., Jan. 9th, 1888."

Immediately after making this indorsement of his ac-
ceptance of the trust in said assignment, and the delivery
of his bond to the said commissioner, the said *Hanson* took
possession of the stock of goods and merchandise assigned
to him, and on the same day, at 2:15 o'clock P. M., said origi-
nal assignment, with the said acceptance of the assignee
indorsed thereon, and the said bond, were filed in the office
of the clerk of the circuit court of said county, and were
marked " Filed " by said clerk, but, within a few minutes
after so marking the same " Filed," they were taken from
the files of the clerk and from his office, and were not re-
turned to said office until 5 o'clock P. M. of said day. On

the same day, and, as is claimed by the plaintiff, at 5 p. m.,
a true copy of said original assignment was also filed in
said clerk's office, upon the back of which there was the
written acceptance of the trusts specified in the assignment,
and upon which there was also the following indorsement
by the court commissioner, Bartlett, viz.:

"I hereby certify that the within is a true copy of the
original assignment, and of the whole thereof, made by
Lewis G. Norgan to *Peter Hanson* on the 9th day of Jan-
uary, 1888, and that the said assignee named in said orig-
inal assignment did in my presence make the indorsement
thereon as required by section 1696 of the Revised Statutes
of 1878.

"Dated Eau Claire, Wis., January 9th, 1888.

"M. D. BARTLETT,

"Court Commissioner, Eau Claire County, Wis."

For the appellant there was a brief by *J. F. Ellis*, attor-
ney, and a separate brief by *Burr W. Jones*, of counsel, and
the cause was argued orally by *Mr. Jones*.

*V. W. James*, for the respondent

TAYLOR, J.   The real question on the trial of this action
was whether the indorsement of the court commissioner
upon the copy of the assignment which was filed in the
office of the clerk of the court on January 9, 1888, was
placed thereon at the time it was filed, on said 9th of Jan-
uary, or whether it was placed thereon after said date, and
after all the attachments were levied upon the property in
question.   We think it is satisfactorily shown that such
copy, with the indorsement of the commissioner thereon,
was not filed until after the first attachment was levied, as
was held by the learned circuit judge on the trial in the
court below, and that the defendant was entitled to judg-
ment for the amount of the debt in such attachment, unless
it should be held that the assignment was so far perfected

as to entitle the assignee to hold the assigned property as against the creditors of the assignor, before filing any copy thereof in the office of the clerk, if such copy be filed within a reasonable time after the execution thereof. The exact time when this indorsement was made on the copy of the assignment by the court commissioner was a disputed fact upon the trial, and under the evidence it was a question of fact for the jury, and not one of law for the court.

Upon the hearing in this court, the learned counsel for the appellant contended that the filing of the bond of the assignee and a copy of the assignment, with the indorsements thereon, as required by secs. 1695, 1696, R. S., was not a condition precedent to passing the title to the assignee, and that the title passed to the assignee, as against the creditors of the assignor, upon the execution of the assignment, the acceptance of the trust by the assignee, and giving the bond as required by said sec. 1694, R. S. Were this an original question in this court, and under the amendments to the assignment laws taking from the assignor the the right to prefer any of his creditors by his assignment, there would be great force in the argument presented. We think, however, that this question is *res adjudicata* in this court; and we do not feel called upon to reverse our former decisions in the construction of these sections, although the later legislation has to some extent better secured the rights of creditors than formerly. In the cases of *Scott v. Seaver*, 52 Wis. 175; *Wadleigh v. Merkle*, 57 Wis. 517; *Clark v. Lamoreux*, 70 Wis. 510; *Farwell v. Webster*, 71 Wis. 485, it is clearly held that the filing of the bond and the copy of the assignment, with the proper indorsements thereon, in the office of the clerk of the proper court, is a condition precedent to passing the title to the assignee as against the creditors of the assignor. Until the legislature sees fit to alter the rule, we must adhere to these decisions.

It was also urged that the filing of the original assign-

ment with the proper indorsements thereon, should be held a sufficient compliance with the statute. That question is not in this case, for two reasons: *First*, because what is claimed now to have been the original assignment was certified by the assignee to be a copy, and there was no certificate of the court commissioner that it was a true copy, or that the assignee had in his presence indorsed the same; *again*, it appears that the original was not left upon file, but was immediately removed from the files by the attorney of the assignee. Such a filing cannot be held to be a compliance with the statute. Holding, as we do, that the filing of the copy of the assignment, properly certified and indorsed, as required by secs. 1695, 1696, is necessary to complete the assignment, it is clear that the learned circuit judge was right in holding that the defendant was entitled to recover the amount of the debt in his first attachment.

As to the right of the defendant to recover for the amount of the other attachments, we must hold that the learned circuit judge committed an error in instructing the jury upon that question. As said above, the evidence as to when the copy with the proper indorsement thereon was on file is conflicting, the plaintiff's testimony tending to show that the indorsements were on when it was filed, January 9, 1888; and the testimony for the defendant tends to show that, although the copy was filed on the 9th, the indorsement was not made thereon until a later date. In regard to the attachments made after the 9th of January, 1888, the learned judge instructed the jury as follows, viz:

"The only question for you to determine is the subsequent attachments which were levied on the 11th and 12th, I think. This was after the filing of this copy, or the filing of this paper. And the only question for you to determine is, Was that paper a complete paper, duly certified to by the court commissioner on or before the time that these attachments were levied? Plaintiff here claims that it was

Hanson vs. Dunn.

complete when filed at 5 o'clock. If that is so, it disposes of this case; but if it was an incomplete copy,— if the court commissioner did not certify to it on that afternoon, but went around and certified to it some subsequent time,— or if this was an incomplete copy when these witnesses that have been called examined it, *if they are correct in saying it was an incorrect copy until some time the next day,— then, so far as the subsequent attachments, the attachments of Sweet, Dempster & Co., and Farwell & Co., they would hold in preference to this assignment, because, if this assignment was not good at the time it was filed, it was not made good until after those attachments. I don't think it could be made good unless they filed a new paper; but, whether that is so or not, it was not made good until after these attachments were served."* Again, the learned judge, in submitting to the jury the question whether the defendant was entitle to recover for the amount of the first attachment or for the amount of all the attachments, says: "That depends upon whether or not this paper that was filed that day was a perfect copy as it appears now,— a completed paper as it is now. If it was, these second attachments can't hold,— the last two attachments. But if it was changed afterwards, and incomplete when it was filed, then it follows that all the attachments must hold, and you will find the defendant's interest amounting to $652.86."

The effect of all the instructions to the jury is that if they find that the copy of the assignment filed on the 9th of January, at 5 o'clock P. M., did not have the certificate of the court commissioner indorsed thereon, required by sec. 1696, R. S., then although he may have indorsed such certificate thereon thereafter, and before the second and third attachments were levied, still such attachments would hold in preference to the assignment. In the view the learned court took of the case, if the copy filed on the 9th was imperfect, such imperfect copy could not be made

perfect by making the proper indorsement thereon, and, in order to make the assignment good, a new copy with the proper indorsements thereon must be filed.

This view of the case we cannot sustain. If the imperfect copy may be aided so as to make the assignment good by the filing of a new copy with the proper indorsements thereon, there is no substantial reason for holding that the imperfect copy filed may not be perfected, and have the same effect in perfecting the assignment as to all persons who have not then obtained a lien upon the assigned property. This question was fully considered by this court in the case of *Farwell v. Webster*, 71 Wis. 485, 486. In that case a copy of the assignment and the assignee's bond had been filed with the clerk of the court on the 26th of January, but the bond was imperfect for the reason that the sureties on the bond had not justified as required by law, and there were no proper certificates indorsed on the copy of the assignment. Afterwards the bond and copy of assignment were taken from the files of the court. A new bond was given, and the proper certificates indorsed upon a copy of the assignment; and they were filed with the clerk on the 29th of January. This court held that the assignment was good as to all persons claiming any interest in the assigned goods by garnishee proceedings commenced after the 29th of January. The chief justice, in his opinion, says: "The assignment was good to transfer the title to the property notwithstanding the defects in the execution of the assignment as originally made; for, while the statute provides that the bond 'shall, immediately after its execution, together with a full and true copy of the assignment,' be filed by the officer taking the same in the office of the clerk of the circuit court, yet this language must have a reasonable construction, and was not intended to prevent or preclude the assignee from perfecting his bond without unreasonable delay, when he had failed to comply with

Hanson vs. Dunn.

some requirement of the statute in the first instance. . . . Had the rights of the plaintiffs intervened before a good bond was executed and filed, a different question as to the liability of the garnishee would be presented."

Certainly as liberal a rule should apply to the filing of the copy of the assignment with the proper indorsements thereon, as to the bond, so far as the assignee is concerned. The bond is a matter which he must give, and be personally responsible for its sufficiency, under the statute. The indorsements upon the copy of the assignment are a duty imposed upon the court commissioner, and over which the assignee has no direct control. When the assignee has given the bond required by the statute, delivered it to the court commissioner, and has indorsed upon the copy of the assignment his acceptance of the trust conferred on him therein, and the assignment has been delivered to him, he has done all he is required to do personally in order to make a good assignment; and it then becomes the duty of the officer before whom the assignment is made to file the bond, with a true copy of the original, having indorsed thereon the acceptance of the trust by the assignee, and his certificate that the same is such true copy. This was all done on the 9th of January, 1888, as early as 5 o'clock P. M. The only thing claimed to be lacking in order to make the assignment a valid assignment was the certificate of the court commissioner, required to be indorsed thereon by him by sec. 1696, R. S. Admitting that the assignment was not perfect until this certificate was made upon such copy so filed, there does not seem to be any substantial reason for holding that such indorsement must be made thereon at the exact time of the filing, and, under the authority of the case above cited, we hold that such certificate may be indorsed on such copy so filed after the same was in fact filed, and that when so indorsed the assignment becomes perfected and the title to the assigned property passes to the assignee as to all creditors of the assignor

who have not then acquired any lien upon such assigned property, either by attachment or garnishment.

The circuit court erred in not submitting to the jury the question whether the indorsement of the certificate of the court commissioner upon the copy of the assignment was not made thereon before the second and third attachments were levied on the assigned property, and in directing the jury that, if they found that such certificate was not on such copy of assignment at the time it was filed with the clerk, at 5 o'clock P. M., January 9th, then they should find for the defendant the full amount of all the claims in said attachment actions.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.